**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ANTONIO CARBAJAL, on behalf of himself and all others similarly situated,**<br><br>Plaintiff,<br><br>vs.<br><br>**RENTOKIL NORTH AMERICA, INC.,**<br><br>Defendant. | CASE NO. 17-CV-06651-YGR<br><br>**ORDER GRANTING MOTION OF DEFENDANT RENTOKIL NORTH AMERICA, INC. TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 13 |

Plaintiff Antonio Carbajal brings this putative class action against defendant Rentokil North American, Inc. for alleged violations of California wage and hour laws and the Fair Labor and Standards Act ("FLSA"). Carbajal brings the following four causes of action against defendants: (i) failure to pay overtime and double-time premium wages; (ii) pay stub violations; (iii) unfair competition; and (iv) FLSA violations. (Dkt. No. 1, Complaint, at 1.)

Now before the court is defendant Rentokil's motion to compel plaintiff into arbitration and dismiss plaintiff's claims. (Dkt. No. 13.) Carbajal opposes this motion on the grounds that the arbitration agreement is unenforceable due to its unconscionability. (Dkt. No. 14, Opposition/Response re Motion to Dismiss, Compel Arbitration or, in the Alternative, Stay the Action.) Having carefully reviewed the pleadings and the papers and exhibits submitted, and for the reasons set forth more fully below, the Court **GRANTS** defendant's motion to compel arbitration and **ORDERS** Carbajal to arbitrate his claims against defendant.

**I.   RELEVANT FACTUAL BACKGROUND**

Plaintiff brings this claim against defendants for alleged wage-and-hour law violations in connection with plaintiff's employment with defendant Rentokil. (Complaint at 1.) Generally, plaintiff alleges that defendants failed to include non-discretionary bonus earnings in the employees' regular rate for the purpose of calculating overtime and double-time wages and failed

1

to pay overtime and double-time on bonus earnings. (Complaint at 2.) Plaintiff seeks both equitable and injunctive relief under California wage-and-hour law and the FLSA, to remedy defendants' continued failure to pay all wages due, pay appropriate overtime and double-time compensation, pay waiting-time penalties, and to provide accurate wage statements. (*Id.* at 1, 13-14.) The putative class consists of every person who worked for defendant in California as a pest control technician between November 13, 2013 and the trial of this action. (*Id.* at 2.)

On or about December 6, 2012, defendant Rentokil (then operating under the name J.C. Ehlrich Company, Inc.) purchased Western Exterminator Company where plaintiff worked. Rentokil presented plaintiff Carbajal with an arbitration agreement as a condition of continued employment. (Declaration of Antonio Carbajal In Support of Opposition, Dkt. No. 14-2, ¶ ¶ 5, 6.) The Agreement is two pages long, written in 12-point font, with the heading "<u>ARBITRATION AGREEMENT</u>" in all caps and underlined. (Declaration of Vicki Fisher in Support of Motion, Dkt. No. 13-3, Exh. 2, "the Agreement.") The Agreement states, in relevant part,

> [T]he parties agree as follows:
> 1. Any and all claims or controversies arising out of Employee's application or candidacy for employment, employment, or cessation of employment with the Company shall be resolved through final and binding arbitration pursuant to the National Rules of the Resolution of Employment Disputes of the American Arbitration Association in existence as of the time the dispute arises. Such claims shall include, but not be limited to, any and all employment-related claims or controversies, such as . . . unpaid wages o[r] overtime under the state and federal wage payment laws.
>
> 3. . . . Unless otherwise required by applicable law, all other employment-related claims shall be resolved by final and binding arbitration and not by a jury in a court of law.
>
> 4. To the extent permitted by law, the parties agree that they shall not join or consolidate claims submitted for arbitration under this Agreement with those of any other persons. The Company shall bear the entire cost of the arbitration.
> \* \* \*
> 7. The arbitrator shall have the power to award all legal relief available in a court of law. In addition, each of the parties shall retain all defenses that they would have in a judicial proceeding, including any defenses based on the statute of limitations

> 8. This agreement is entered into under the Federal Arbitration Act, and shall be interpreted and construed in accordance with the law and procedures developed under that statute.

(*Id*. at 1-2.) Additionally, the National Rules of the Resolution of Employment Disputes of the American Arbitration Association ("AAA Rules"), incorporated into the Agreement provide: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope [,] or validity of the arbitration agreement." (Fisher Decl., Dkt. 13-4, Exh. 3.)

The Agreement presented to Carbajal for his signature did not attach the AAA Rules, and did not explain where they could be found. (Carbajal Decl. at ¶ 12; Fisher Decl. Dkt. No. 13-3, Exh. 2.) Defendant required Carbajal to execute the Agreement as a condition of continued employment, with no opportunity to negotiate, and no opt-out procedures. (Carbajal Decl. ¶ 6.)

## II. LEGAL FRAMEWORK

The Federal Arbitration Act (the "FAA") requires a district court to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement. 9 U.S.C. § 3. A party may bring a motion in the district court to compel arbitration. 9 U.S.C. § 4. The FAA reflects "both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("*Concepcion*"); *Mortensen v. Bresnan Commuc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) ("The [FAA] . . . has been interpreted to embody 'a liberal federal policy favoring arbitration.'"). The FAA broadly provides that an arbitration clause in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

In ruling on the motion, the Court's role is typically limited to determining whether: (i) an agreement exists between the parties to arbitrate; (ii) the claims at issue fall within the scope of the agreement; and (iii) the agreement is valid and enforceable. *Lifescan, Inc. v. Premier Dibetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). Once a court is satisfied the parties entered into

an enforceable arbitration agreement covering the subject of their litigation, the Court must promptly compel arbitration. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985). Generally, if a contract contains an arbitration provision, arbitrability is presumed, and "doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

"Both the arbitrability of the merits of a dispute and the question of who has the primary power to decide arbitrability depend on the agreement of the parties." *Goldman, Sachs & Co. v. Reno*, 747 F.3d 733, 738 (9th Cir. 2014) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)); *see also Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013). However, these questions are decided by the arbitrator instead of courts where "the parties clearly and unmistakably" express that intention. *AT&T Techs.*, 475 U.S. at 649; *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.")

When a court compels arbitration, as "a matter of its discretion to control its docket," it may stay litigation among non-arbitrating parties pending the outcome of arbitrable claims or a parallel arbitration. *Moses H. Cone. Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20 n.23 (1983); *see, e.g., BrowserCam, Inc. v. Gomez, Inc.*, No. 08–CV–02959–WHA, 2009 WL 210513, at *3 (N.D. Cal. Jan 27, 2009) (it is "within a district court's discretion whether to stay, 'for [c]onsiderations of economy and efficiency,' an entire action, including issues not arbitrable, pending arbitration.") (quoting *United States ex rel. Newton v. Neumann Caribbean Int'l., Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985)).

### III. DISCUSSION

Rentokil moves the Court to compel arbitration of Carbajal's claims in this instant action, pursuant to the arbitration provision in the Agreement. Carbajal opposes arbitration.

4

As a preliminary matter, if an arbitration agreement delegates the question of arbitrability to the arbitrator, a party opposing arbitration may only challenge the delegation provision *itself* as unconscionable. *Brennan v. Opus Bank*, 796 F.3d 1125, 1128 (9th Cir. 2015). Here, plaintiff argues that there is no clear and unmistakable delegation of the arbitrability issue in the Agreement. Defendant agrees.[1] Thus, it is for the Court to determine whether the agreement to arbitrate is enforceable and encompasses the claims.

No dispute exists that the Agreement here requires arbitration of the claims alleged by plaintiff. Rather, Carbajal argues that the Agreement is unconscionable, and therefore unenforceable, on several grounds, citing *Armendariz v. Foundation Health Psychcare Servs. Inc.*, 24 Cal.4th 83, 114 (2000).

**A. Unconscionability May Invalidate An Arbitration Agreement**

As a preliminary matter, Rentokil argues that the unconscionability analysis under *Armendariz* constitutes rules not generally applicable to all contracts, but instead only applies to employment arbitration agreements. Rentokil offers no authority to support invalidating *Armendariz*, but instead relies on generally on the Supreme Court's decision in *Concepcion* and the California Supreme Court's subsequent decisions in *Iskanian* and *Sonic*. *See Concepcion,* 563 U.S. 333; *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal.4th 348, 360 (2014) ("a state's refusal to enforce [arbitration agreements that waived the right to class proceedings] on grounds of public policy or unconscionability is preempted by the FAA."); *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1139 (2013) ("*Sonic*").

The Court finds that Rentokil's argument is without support. The Supreme Court in

---

[1] The Ninth Circuit has held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1128 (9th Cir. 2015). However, *Brennan* and subsequent cases have been careful to distinguish situations in which at least one party to the agreement is unsophisticated. *See Ingalls v. Spotify USA, Inc.*, No. 16-cv-03533-WHA, 2016 WL 6679561, at *3 (N.D. Cal. Nov. 14, 2016) ("every district court decision in our circuit to address the question since *Brennan* has held that incorporation of the AAA rules was insufficient to establish delegation in consumer contracts involving at least one unsophisticated party.") While the agreement here plainly incorporates the AAA rules, plaintiff is not a sophisticated party who "clearly and unmistakably" intended to delegate jurisdiction to the arbitrator. Moreover, defendant submits the Court should resolve the gateway issue of unconscionability.

5

*Concepcion* reiterated that the FAA "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract . . . [including] generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Concepcion,* 563 U.S. at 339, quoting 9 U.S.C. § 2. It is only when state law relies on "the uniqueness of an agreement to arbitrate" to find unconscionability that the state law will be preempted by the FAA. *Id*. at 341. Consequently, "after *Concepcion*, unconscionability remains a valid defense to a petition to compel arbitration." *Sonic*, 57 Cal.4th at 1143.

*Concepcion* merely clarified that rules such as unconscionability, "even when facially nondiscriminatory, must not disfavor arbitration *as applied* by imposing procedural requirements that 'interfere[ ] with fundamental attributes of arbitration,' especially its ' "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Id*. (quoting *Concepcion*, 563 U.S. at 344, 348); *see also Iskanian*, 59 Cal. 4th at 360, 366 (considerations of whether class arbitration was "more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration" disfavored arbitration particularly and were not a valid basis for finding an arbitration agreement unconscionable). California's "unconscionability standard is, as it must be, the same for arbitration and nonarbitration agreements." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 912 (2015). Thus, after *Concepcion*, unconscionability continues to apply, but "the application of unconscionability doctrine to an arbitration clause must proceed from general principles that apply to any contract clause. In particular, the standard for substantive unconscionability—the requisite degree of unfairness beyond merely a bad bargain—must be as rigorous and demanding for arbitration clauses as for any contract clause." *Id.*

Because the Court finds that the *Armendariz* unconscionability analysis has continuing viability, it next considers Carbajal's arguments that the Agreement is unconscionable.

**B.     Unconscionability Analysis of the Agreement Herein**

"[U]nconscionability has both a 'procedural' and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2015)

(citations and internal quotations omitted). "Both substantive and procedural unconscionability must be present in order for a court to find a contract unconscionable, but 'they need not be present in the same degree.'" *Id.* (citations omitted). Although both must appear for a court to invalidate a contract or one of its individual terms, they need not be present in the same degree: "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal.4th at 114; *accord*, *Roman v. Superior Court*, 172 Cal.App.4th 1462, 1470 (2009). "Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." *Armendariz* 24 Cal.4th at 114, *abrogated on other grounds by Concepcion*, 563 U.S. 333, 340 (2011).

Carbajal argues that the Agreement here is both procedurally and substantively unconscionable, on several grounds. The Court examines each aspect of the unconscionability analysis in turn.

### 1. *Procedural Unconscionability*

Procedural unconscionability involves the manner in which a contract was negotiated and the circumstances of parties at the time. Generally, in analyzing procedural unconscionability, courts focus on the level of "oppression" and "surprise" involved in the agreement. *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 783 (9th Cir. 2002); *A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 486 (1982). Oppression involves a weaker party's absence of choice and unequal bargaining power which results in "no real negotiation." *A&M Produce*, 135 Cal.App.3d at 486. A 'surprise' analysis asks whether the contract clearly disclosed its terms and fulfilled the reasonable expectations of the weaker party. *Id.*; *see Parada v. Superior Ct.*, 176 Cal.App.4th 1554, 1568 (2009).

Plaintiff asserts the contract was procedurally unconscionable because: (1) it was adhesive and presented to him as a condition of continued employment; (2) the employer has superior bargaining power; (3) the agreement did not include a copy of the American Arbitration Association (AAA) arbitration rules that it incorporated.

On the question of adhesiveness, the *Armendariz* court stated, "in the case of preemployment arbitration contracts, the economic pressure exerted by the employer on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an adhesion contract." *Armendariz*, 24 Cal.4th at 114-15. However, adhesion alone is not enough to prove procedural unconscionability. *See Roman*, 172 Cal.App.4th at 1471 n.2 ("The adhesive nature of the contract will not always make it procedurally unconscionable. When bargaining power is not grossly unequal and reasonable alternatives exist, oppression typically inherent in adhesion contracts is minimal.").

Next, plaintiff argues that the agreement is procedurally unconscionable because the employer had superior bargaining power, which gave him no meaningful opportunity to opt-out of the agreement. Relying on *Circuit City*, plaintiff argues that an agreement drafted by an employer with superior bargaining power which does not allow employees to make any modifications or to decline arbitration, is unconscionable. *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002). Failure to permit a reasonable opportunity to opt-out indicates procedural unconscionability. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) (*citing Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002). Here, plaintiff indicates that he was not given the opportunity to negotiate the agreement or to opt out of it, and he "felt pressure to sign it in order to keep [his] job." (Carbajal Decl. ¶ 6.) Defendant does not dispute this, and no provision of the Agreement indicates that an employee may opt not to sign it and retain employment.

Plaintiff further argues that the agreement is procedurally unconscionable because it references the AAA arbitration rules but does not attach them or state where they can be found, and defendant never provided plaintiff a copy. (*See* Carbajal Decl. ¶ 12.) However, the California Supreme Court has held that failure to attach the AAA rules does not establish procedural unconscionability. *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1246 (2016); *see also Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676, 692 (2014) ("[i]n the absence of oppression or surprise, we decline to find the failure to attach a copy of the AAA rules rendered the

8

agreement procedurally unconscionable").[2] The failure to include the AAA rules or some direction about how to find them does not weigh in favor of invalidating the Agreement.

Moreover, other factors cut against a finding of procedural unconscionability. The Agreement was written in clear and straightforward language in 12-point font over two pages, and included a heading underlined and in all caps stating "ARBITRATION AGREEMENT." (Fisher Decl., Exh. 2.) While the agreement did not define arbitration for plaintiff, it did state that "all other employment-related claims shall be resolved by final and binding arbitration *and not by a jury in a court of law*." (*Id*., emphasis supplied.)

In short, considering the terms of the agreement, its adhesive nature, defendant's superior bargaining power, and the lack of an opt-out provision, plaintiff has demonstrated some amount of procedural unconscionability. The Court next considers Carbajal's arguments that the Agreement is substantively unconscionable in its terms.

### 2. *Substantive Unconscionability*

Plaintiff raises four arguments to support a finding that the agreement is substantively unconscionable: (i) the Agreement unlawfully limits plaintiff's remedies; (ii) the class action provision is unenforceable in the Ninth Circuit; (iii) inclusion of a delegation clause is unconscionable because it unfairly gives the arbitrator the power to determine which claims are arbitrable, contrary to a layperson's expectations; and (iv) the Agreement's silence as to which state's substantive law applies unfairly allows defendant to assert less-favorable, non-California defenses. The Court considers each argument in turn.

#### a. *Limitations on Available Relief*

Plaintiff argues that, under *Armendariz*, one of the factors a court must consider in determining enforceability is whether it provides "for all of the types of relief that would be available in courts." *Armendariz*, 24 Cal.4th at 102. Plaintiff argues that since the Agreement

---

[2] Plaintiff cites *Trivedi v. Curexo Technology Corporation*, 189 Cal.App.4th 387 (2010) in his opposition, but that decision has been disapproved expressly by the Supreme Court's decision in *Baltazar*. There, the high court held that, in *Trivedi* and other cases, "plaintiff's unconscionability claim depended in some manner on the arbitration rules in question," not the mere fact that the AAA rules were not attached. *Baltazar*, 62 Cal. 4th at 1246.

9

here only provides the arbitrator power to award *legal* relief, the Agreement necessarily precludes *equitable* relief. Plaintiff seeks equitable relief in his complaint under California Unfair Competition Law. The Agreement states that "[t]he arbitrator shall have the power to award all legal relief available in a court of law." (Fisher Decl., Exh. 2 at ¶ 7.)

The Court finds that the plain language of the Agreement does not preclude equitable remedies. The agreement is drafted to encompass all employment-related claims either party might have against the other. Defendant agrees that there is no prohibition on pursuing equitable relief. Further, to the extent that the Agreement can be construed to preclude equitable relief, it is severable. *See Armendariz,* 24 Cal. 4th at 121-22 (unconscionable provisions may be severed from the agreement, allowing the remainder of the agreement to be enforced so long as the entire agreement is not "permeated" with unconscionability); *Little v. Auto Stiegler,* 29 Cal.4th 1064, 1075-76 (2003) (same). Thus, remedies provision does not support a finding of substantive unconscionability.

### b. *Class Action Waiver*

Second, plaintiff argues that the Agreement's terms constitute a class action waiver.[3] As such, plaintiff contends that the inclusion of a class action waiver is unlawful and unconscionable, citing *Morris v. Ernst & Young.* 834 F.3d 975, 983 (9th Cir. 2016). *Morris* has since been overturned by the Supreme Court's decision in *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018). Further, *Epic Systems* essentially reiterated *Concepcion*, in which the Supreme Court held that the FAA preempted California state court authorities finding class arbitration waivers unconscionable, because those authorities contravened the Congressional purpose of the FAA to promote a streamlined arbitration process. *Concepcion*, 563 U.S. at 344. Therefore, both *Epic Systems* and *Concepcion* foreclose plaintiff's argument that a class action waiver renders the Agreement substantively unconscionable.

---

[3] Defendant argues that paragraph 4 of the parties' Agreement is not an explicit class or collective action waiver. Paragraph 4 states "the parties agree they shall not join or consolidate claims submitted for arbitration under this Agreement with those of any other persons." (Fisher Decl., Exh. 2, ¶ 4.) The Court finds no meaningful distinction between paragraph 4 and a "true" class action waiver.

10

c. *Delegation Clause*

Plaintiff next argues that the delegation clause, incorporated into the Agreement by its reference to the AAA rules, is unconscionable. Plaintiff contends that allowing arbitrators to decide whether a claim is within their own jurisdiction is "is not within the adhering party's reasonable expectations since arbitrators are not normally expected to determine their own jurisdiction," citing *Htay Htay Chin v. Advanced Fresh Concepts Franchise Corp.*, 194 Cal. App. 4th 704, 710-11 (2011).

As indicated above, defendant agrees that arbitrability should not be delegated to the arbitrator under this Agreement. To the extent the Agreement otherwise could have been read to include a delegation clause, the parties agree it is not enforceable. Thus, it is, in effect, severed from the Agreement. Whether the provision might be enforceable, or unconscionable, under other circumstances is not properly before the Court in these circumstances. Therefore, the incorporation of the AAA rules on this issue does not render the Agreement substantively unconscionable.

d. *Failure to Include Choice-of-Law Provision*

Finally, plaintiff argues that the Agreement is unconscionable for failure to include a choice-of-law provision. Plaintiff contends that, because the Agreement is silent as to what state's substantive law applies, defendant may assert non-California defenses or counterclaims that it would otherwise be precluded from bringing in a court. Plaintiff argues that this would "shock the conscience" since it would place a single employee in the disadvantageous position of arbitrating against a multinational corporation under unfamiliar laws.

The Agreement's silence as to the choice of law is not unconscionable. As with the other legal issues subject to arbitration under the Agreement, determination of which state's law applies must be decided by the arbitrator, absent an agreement of the parties to the contrary. The FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). Plaintiff's argument that defendant "may" assert that another state's law applies to the substance of the claims, and thus that the arbitrator "may" agree, is

11

speculative. Indeed, defendant concedes on reply that California law should apply to the claims and the interpretation of the Agreement. (Reply at 15:10-14.) Plaintiff offers no authority to support the notion that allowing the arbitrator to decide what substantive law applies to the claims would be unfair or shock the conscience.

IV. **CONCLUSION**

For the foregoing reasons, the motion to compel arbitration is **GRANTED** as to all claims herein. Because all of plaintiff's claims are subject to arbitration under the Agreement, there is no need for a stay of the litigation.[4] Accordingly, the case is dismissed without prejudice.

**IT IS SO ORDERED**

Dated: July 5, 2018

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[4] Plaintiff argued, without citation to authority, that the Court should not compel arbitration of his claims for equitable relief, even if it found the remainder of the action subject to arbitration. However, the Ninth Circuit has held that claims for equitable relief, including public equitable relief under the UCL and other statutes, should be compelled to arbitration and the FAA preempts California authority to the contrary. *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937 (9th Cir. 2013) ("we therefore hold that the FAA preempts the *Broughton–Cruz* rule" prohibiting arbitration of claims for public relief under the UCL and other state statutes).